European Am. Bank v Bank of Nova Scotia (2003 NY Slip Op 51504(U))

[*1]

European Am. Bank v Bank of Nova Scotia

2003 NY Slip Op 51504(U)

Decided on December 17, 2003

Supreme Court , New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 17, 2003

Supreme Court , New York County
 EUROPEAN AMERICAN BANK, Petitioner,
against
THE BANK OF NOVA SCOTIA, Respondent, VAMINCOR DOMINICANA, S.A., TIMOTHY MAHONEY and DANIEL MAHONEY, Judgment Debtors.
Index No. 107603/01

LOUIS B. YORK, J.
The Court, sua sponte, amends the judgment dated December 10, 2003 to correct
several typographical errors.
Introduction
This is a turnover proceeding. The parties are litigating this matter pursuant to an agreed statement of facts submitted to the Court. Plaintiff seeks to recover monies that were earmarked for a bank in the Cayman Islands, but instead were incorrectly frozen by the intermediary bank, the Bank of Nova Scotia-NY ("BNS-NY"), an agency of the respondent, the Bank of Nova Scotia. BNS-NY is licensed by the State of New York. It has approximately 325 employees and is engaged in loan funding transactions. It is also the primary conduit of global wire transfers for the Bank of Nova Scotia (BNS) located in Nova Scotia, Canada.
Facts
Petitioner, European American Bank ("EAB") recovered a judgment against judgment debtor Vamincor Dominica, SA ("Vamincor") and two other individuals. The amount of that judgment is over three million dollars.
Non-party Rochez owed Vamincor $239,983.80. Finding out that Rochez Brothers was about to wire through its Pittsburgh bank to BNS-NY a sum to satisfy its debt, EAB served a restraining notice and information subpoena on BNS-NY. BNS-NY responded that it was not in possession of any accounts or other property of Vamincor. EAB then demanded that the restraining notice be honored. BNS then promised to freeze any accounts of Vamincor under a mistaken understanding of U.S. law. Thereafter, two wire transfers were sent by Rochez Brothers from its Pittsburgh bank to BNS-NY for transfer to Vamincor's bank in the Cayman Islands, a separately incorporated subsidiary of BNS. The usual practice of BNS-NY and BNS-Cayman Islands was to make the appropriate debits and credits in their respective bank accounts [*2]without the use of a wire service. However, because these wire transfers were immediately frozen, they never reached the Cayman Islands. Thereafter, petitioner EAB levied on the funds. But BNS, realizing that it froze these funds by mistake, has refused to turn these funds over to the City Marshall.
Contentions of the Parties
BNS claims that these funds were frozen illegally because BNS-NY had no accounts at the time the restraining notice was served. Moreover, BNS-NY was an intermediary bank, and therefore, the funds were not actually in its possession when the wire transfer took place. Therefore, the instructions of the initiating bank should have been followed.
The petitioner, EAB, argues that no matter how these funds arrived at the Bank of New York, they were there at the time they were levied on and, therefore, should have been turned over. Moreover, it claims that contrary to BNS-NY's contentions, BNS-NY was, in this case, a receiving bank with the final destination of the funds at BNS-NY location because BNS-NY does not wire fund transfers to BNS-Cayman Islands but instead accomplishes the transfer through bookkeeping entries.
Decision
The New York rule is that in order to give effect to an attachment against a third-party, there must be an existing debt or property in which the judgment debtor has an interest at the time the third-party is served (CPLR 5222[b]).

A bank or transfer agent not in possession of property in which the judgment creditor has an interest or owing any debt to the judgment creditor at the time of service of the notice cannot be held liable for violation of the restraint
(Gallant v Kanterman, 198 AD2d 76, 603 NYS2d 315 [1st Dept 1993]; accord Greenwood Packing Corp. v Triangle Meat and Provisions Corp. [2nd Dept 1986]).
Petitioner EAB has argued that BNS-NY is not an intermediary bank but a beneficiary bank so that even if there was nothing to attach at the time the restraint was served, there were funds there at the time that the levy was made and, therefore, the levy should have been honored. The Court disagrees. UCC 4-A 103(1)(a) does not limit the transfer of funds by wire transfer only as petitioner argues. Virtually any means of communicating the transfer is acceptable.
Payment order means an instruction of a sender to a receiving bank transmitted orally, electronically, or in writing to pay or cause another bank to pay, a fixed determinable amount of money to a beneficiary if: *** (iii) the instruction is transmitted to the sender directly to the receiving bank or to an agent, funds transfer system or communication system for transmittal to the receiving bank.
And where such a further transfer is contemplated, the levy cannot be enforced see, Weston Compagne de Finance et D'Investment, SA v La Republica Del Equador, 1993 Lexis 9331*9 (1993 US Dist ) Nor would a contrary result be desirable. The respondent has followed [*3]the law correctly. Neither is there any good reason why the petitioner should benefit and respondent should suffer as the result of the funds in question having been frozen contrary to the law, thus defeating the goal of the UCC that funds transmitted to an intermediary bank should not be attached until they reach their ultimate destination at the beneficiary's bank. Accordingly, it is
ORDERED and ADJUDGED that the marshal's levy be released, the funds be unfrozen and released for the appropriate transfer to the Bank of New York, Cayman Islands together with costs and disbursements of $__________________ as taxed by the Clerk of the Court.
 Dated: December 17, 2003Enter:
_______________________
Louis B. York, J.S.C.
Check one: [X] FINAL DISPOSITION [ ] NON-FINAL DISPOSITION